## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **No. 1:20-cr-495** |
| | ) |
| **TERRANCE P. LINK,** | ) **Honorable Judge Mary** |
| | ) **Rowland** |
| **Defendant.** | ) |

### DEFENDANT LINK'S SENTENCING MEMORANDUM

## I.
## INTRODUCTION

**TERRANCE P. LINK** (hereinafter "Mr. LINK") is 76 years of age. Prior to this matter, Mr. LINK had never been arrested. On March 6, 2024, Mr. LINK will appear before this Honorable Court for sentencing—a long-awaited conclusion to an unfortunate chapter in an otherwise respectable and unblemished life. On August 23, 2020, a one-count information was filed charging Mr. LINK with filing a false tax return in violation of Title 26, United States Code, Section 7206(1). [Dkt. 1] On September 16, 2020, Mr. LINK pleaded guilty to the information and accepted full responsibility for his conduct. Mr. LINK is now prepared for this Honorable Court to impose a sentence that is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2). For the reasons that follow, Mr. LINK respectfully asks this Honorable Court to impose a sentence of probation, which would comport with the statute, the United States

1

Probation Officer's recommendation, the advisory Guidelines and Mr. LINK's plea agreement. But most importantly, probation would be a fair sentence in this matter.

### A.     Plea Agreement, Sentencing Guidelines and Parties' Positions

As a threshold matter, the parties agree that Mr. LINK's Base Offense Level is 14 and his Criminal History Category is I. [Dkt. 12, ¶10(b) and (c)] The parties also agree that Mr. LINK has accepted full personal responsibility for his offense and relevant conduct, warranting a 2-level reduction. *Id.* Mr. LINK meets the criteria at USSG §§ 4C1.1(a)(1)-(10) for Zero-Point Offenders, thus qualifying him for an additional 2-level reduction. [Dkt. 33, ¶ 23] The Probation Officer concurs with the parties' calculations. [Dkt. 33, ¶¶ 16-24] At sentencing, the government will move the Court pursuant to Guideline §5K1.1 to depart downward from the low end of the applicable Guideline range and shall recommend a sentence of probation. [Dkt. 12, ¶ 12] The Probation Officer also recommends probation. Mr. LINK respectfully asks this Court to accept these recommendations and impose a sentence of probation.

### II.
### APPLICATION OF 18 U.S.C. § 3553(a) FACTORS

### A.     Nature and Circumstances of the Offense

Mr. LINK was convicted of filing a false 2016 tax return. The facts surrounding this offense are straightforward and they are set forth in the plea agreement and the Presentence Investigation Report (hereinafter "PSIR")[Dkt. 12, ¶ 6; 33, ¶¶ 6-10]. From 1997 until his retirement in 2020, Mr. LINK was employed as an Illinois State Senator. Like all legislators in Illinois, Mr. LINK maintained a campaign fund. Mr. LINK was authorized by law to make campaign-related disbursements from this

account, which included payments for day-to-day expenses like staff salaries, rent, travel, advertising, telephones, fundraising, office supplies and equipment.

In approximately 2012, one of Mr. LINK's closest friends, whom he had known since childhood (hereinafter "Individual A"), fell on hard times. For a period of years, Individual A suffered extraordinary personal and financial turmoil. Individual A had owned and operated a successful business for many years which become insolvent and failed, causing him to lose not only his livelihood but also his family home. To make matters worse, during that time, Individual A's wife was diagnosed with an aggressive form of cancer. Her condition required surgeries, prolonged hospital stays, chemotherapy and radiation treatments. Unfortunately, Individual A's health insurance was woefully insufficient to cover the enormous cost of his wife's medical care. At the same time, Individual A's son, who suffered for years from chronic drug addiction, was institutionalized again in a residential drug rehabilitation facility. The combination of these circumstances led Individual A to complete financial ruin.

In desperation, Individual A turned to Terry LINK, his trusted friend of over sixty years. Individual A confided his troubles to Mr. LINK and requested financial assistance. Without hesitation, Mr. LINK agreed to help. After all, Individual A had been there for Mr. LINK through an extremely difficult period in his own life. Mr. LINK did not draw up a contract, a promissory note or even an I.O.U. He felt no need to do so; he trusted Individual A unreservedly. In approximately 2012, Mr. LINK began providing Individual A with frequent payments, trusting Individual A's

repeated promises of reimbursement. Not once during Individual A's time of hardship did Mr. LINK ask Individual A about repayment.

Mr. LINK does not hail from affluence. Nor does he have vast personal financial reserves from which to draw. Unlike most legislators, Mr. LINK's only source of income was the salary he earned as a Senator in the Illinois General Assembly. In order to assist Individual A, Mr. LINK withdrew money from his campaign fund. He also used some of the campaign funds for personal expenses. This continued for a period of years. At all times, Mr. LINK intended to repay the campaign funds once Individual A reimbursed him. But sadly, during the fall of 2018, Individual A's wife and son passed away within months of each other. Individual A had also developed cancer and he died in December 2018. Individual A never reimbursed Mr. LINK for any of the funds he borrowed.

Mr. LINK's use of campaign funds for personal expenses rendered the funds taxable income. As outlined in the plea agreement, Mr. LINK failed to report on his Individual Tax Return—IRS Form 1040—the campaign funds he withdrew for personal reasons. In so doing, he underreported his actual income, causing a loss of approximately \$71,133 to the Internal Revenue Service and approximately \$11,527.00 to the Illinois Department of Revenue. [Dkt. 12, ¶ 6; Dkt. 33, ¶4] Mr. LINK deeply regrets his wrongdoing. He has accepted full responsibility for his offense conduct and relevant conduct. [Dkt. 12, ¶ 6] He looks forward to making full restitution for this offense and to finally putting this matter behind him.

**B.** __Mr. LINK's Sincere Remorse, Complete Acceptance of Responsibility and Full Cooperation With the Government__

On September 16, 2020, Mr. LINK appeared in Court, waived his right to be charged by indictment and pleaded guilty to the charge contained in the information. [Dkt. 1] Mr. LINK truthfully admitted his offense and relevant conduct, as set forth in his plea agreement. [Dkt. 12, ¶ 6] When FBI agents approached him regarding the tax offense, Mr. **LINK** immediately agreed to cooperate with the government. Throughout 2018 and 2019, he provided information and participated in recorded conversations and meetings at the government's request. His testimony before a grand jury in October 2019 led to the return of an indictment charging two defendants with bribery and related offenses. In June 2023, Mr. LINK testified at the trial in that case, which resulted in a conviction.

Mr. LINK agreed to delay his sentencing until the conclusion of his cooperation. As noted in the PSR, Mr. LINK cooperated fully with the Probation Office during its investigation and he timely provided all requested documentation. [Dkt. 33, ¶ 14] The PSR further recognized, "The defendant has been compliant with the conditions of bond. He has not incurred any new arrests and has kept all court appearances." [Dkt. 33, ¶5] For the past four years, Mr. LINK has fulfilled every condition of release imposed by this Court. In word and in deed, Mr. LINK has done everything in his power to right his wrong.

All agree that Mr. LINK has accepted full responsibility for his offense. But his acceptance of responsibility has not been confined to the courthouse. The letters of support attached hereto as "Exhibit A" show that Mr. LINK has sincerely and

profusely apologized to his family and friends for having committed this offense. By all accounts, this offense represents a marked departure from a lifetime of service, dedication and decency. The letters of support to this Court demonstrate that Mr. LINK's remorse is genuine and heartfelt. Indeed, these letters share a common theme; this offense is completely inconsistent with Mr. LINK's character and his lifelong history of service to others.

### C.   History And Characteristics Of Mr. LINK

#### 1.   Mr. LINK's Humble Beginnings

Mr. LINK is 76 years old. Prior to this offense, he had never been arrested or charged with any crime. Mr. LINK was born in Waukegan, Illinois on March 20, 1947. He is the youngest of four children born to the union of Elmer and Pauline Link, both of whom were first generation Americans. Elmer Link was the son of German immigrants who settled in Wisconsin. Elmer worked for decades as a laborer and groundskeeper at Great Lakes Naval Station in North Chicago, Illinois. Mr. LINK's mother, Pauline Link, was the daughter of Slovenian immigrants who settled in Waukegan, Illinois. The devoted mother of four, Pauline Link was a full-time homemaker. To help support her family, Pauline Link also cleaned houses.

When Mr. LINK was born, his parents and three siblings lived in cramped quarters in his grandparents' North Chicago home. Soon thereafter, Elmer and Pauline LINK moved their young family into the couple's first home—a humble cottage in unincorporated North Chicago that had no running water or indoor plumbing. A truck delivered water for household use and the family's drinking water

came from a well. Mr. LINK's family used an outhouse located behind the family home. During the winter, Mr. LINK would wait—sometimes quite uncomfortably—until he got to school to use the bathroom. When Mr. LINK was ten years old, his father equipped the family home with indoor plumbing and built the home's first indoor shower.

Though his family was poor, Mr. LINK recalls his childhood fondly. He credits his parents' work ethic and determination for keeping their family fed, clothed, sheltered and happy. Mr. LINK reminisces, "There was never money to speak of, but there was plenty of love to go around." Mr. LINK lived at that home with his parents until he married at the age of 21. In 1978, when Mr. LINK was 31 years old, Elmer LINK had a heart attack and he died suddenly at the age of 66. His mother died at the age of 85, after a 9-year battle with Alzheimer's disease. Mr. LINK shared a close bond with his parents. Until the end of their lives, Mr. LINK was their devoted son, friend, intercessor and protector.

None of Mr. LINK's family members have ever been in legal trouble of any kind. On the contrary, his siblings all led productive and law-abiding lives. Mr. LINK's eldest brother John Link—his only living sibling—is now 86 years of age. John Link worked for 36 years in management at Commonwealth Edison. His sister Joanne, who passed away at age 80 in 2020, worked for decades as a corporate secretary. In February 2020, Mr. LINK's brother, Edward Link, succumbed to blood cancer and passed away at the age of 77. Ed enjoyed a long and successful marketing career at AC Neilson. Mr. LINK and his brother Ed were extremely close and Ed's

passing was tremendously difficult. True to his nature, Mr. LINK was at Ed's bedside until the very end, reminiscing about their youth and retelling long-forgotten stories. Mr. LINK is deeply grateful to have spent Ed's last weeks of life with him and to have been able to comfort him in his final days.

### 2.    Mr. LINK's Educational History

Mr. LINK attended South Elementary School in North Chicago, Illinois. He later attended nearby Neal Junior High School. Mr. LINK graduated from North Chicago High School, where he played on the football team as a guard and fullback before suffering a career-ending knee injury. Thereafter, Mr. LINK attended Stout State University in Menominee, Wisconsin, which is now part of the University of Wisconsin. When he married, Mr. LINK left college and later enrolled at the College of Lake County.

### 3.    Mr. LINK's Marital and Parental History

Mr. LINK has been married twice. He has four daughters—two from his first marriage and two step-daughters from his current marriage—and he is the proud, engaged and doting grandfather of five grandchildren. Mr. LINK first married when he was 21 years old. The couple had two daughters, both of whom have successful careers in public service. Mr. LINK's eldest daughter is 52 years old and his younger daughter is 49 years old. Regarding his first marriage, Mr. LINK recalls, "We were kids ourselves and we still had so much growing up to do." After their divorce, Mr. LINK and his ex-wife remained close friends, which continues to this day. They have

shared their parenting responsibilities equally and have happily raised two productive, law-abiding and responsible daughters, of whom they are very proud.

Mr. LINK met his second wife, Susan McCall-Link, in 1995 when they were introduced by mutual friends. Before she retired, Susan was the Community Affairs Director for the Village of Vernon Hills. Mr. LINK and Susan McCall had an instant connection and they soon began a dating relationship. The couple married in June of 1996. Mr. LINK has been happily married to Susan McCall-Link for 27 years. Together, they share four daughters and five grandchildren, with whom they enjoy a very close bond. The LINKS' marriage has been a happy, supportive and stable one. They consider each other equal partners. "Susie is my best friend," Mr. LINK proudly states without reservation.

Unfortunately, Mrs. LINK's health is severely compromised. She suffers from the incurable disease—Multiple Sclerosis (hereinafter "MS")—which was first diagnosed in her late 30s. MS is a chronic, unpredictable and debilitating disease that causes the immune system to attack the central nervous system (hereinafter "CNS"), including the brain, spinal cord and optic nerves. MS damages the protective insulation surrounding nerve fibers, known as myelin. This interferes with neural communication within the CNS, producing a variety of challenging symptoms that profoundly compromise a patient's quality of life. MS symptoms commonly include blurred vision, difficulty walking, numbness, fatigue, spasticity, bladder and bowel disturbances, pain, and cognitive deficits. *See* Facts About MS, attached hereto as "Exhibit B." Mrs. LINK tires easily and has difficulty walking. A surgery to repair a

displaced nerve in her right arm unfortunately left two fingers on her right hand essentially paralyzed. Eight years ago, Mrs. LINK was forced to retire on full disability from a successful career she loved and at which she excelled. Over the years, Mrs. LINK's MS symptoms have become increasingly difficult to manage and she suffers frequent flareups. Sadly—yet predictably—Mrs. LINK's condition has worsened over time. Her treatment team has noted a slow but steady decline in her overall health in recent years.

### 4. Mr. LINK's Employment History and Political Career

Mr. LINK has worked in public service for most of his life. Aside from caddying and odd jobs during his youth, Mr. LINK's life's work has been largely devoted to serving the public. His first employment in the public sector was in the late 1960s as a Public Health Officer for the City of North Chicago where he performed license checks. Next, Mr. LINK worked for the Lake County Clerk in the early 1970s. His time there was formative—it ignited a desire to serve the public that would ultimately inspire his entire career. Mr. LINK helped to design and lead the Lake County Elections Department, which still exists today. Before Mr. LINK joined the Clerk's Office, the administration of elections in Lake County was outsourced. Mr. LINK helped to revolutionize the process by returning the management of Lake County elections to the Clerk's Office. This resulted in a more efficient electoral system and substantial savings to taxpayers. Notably, aside from modernization efforts, no fundamental changes have been made to the Elections Department in the years since—a testament to its enduring efficacy.

Mr. LINK had the good fortune of being mentored by the late Grace Mary Stern, who was elected to the Lake County Board in 1966. Ms. Stern was a pioneer in her time. Elected Lake County Clerk in 1970, she was the first Democrat to win election to countywide office in Lake County since the American Civil War. Later that year, in the first of many political contests to follow, Mr. LINK ran for Alderman in North Chicago and he lost by only 15 votes. Ms. Stern held the office of Lake County Clerk until 1982, when she became the Democratic nominee for Lieutenant Governor to Adlai Stevenson III. Until her death in 1998, Mr. LINK maintained close contact with Ms. Stern, who was revered for her honesty and her humanitarian initiatives. Mr. LINK's career was heavily influenced her fine example.

Between 1974 and 1981, Mr. LINK worked as an administrator in the Office of the Illinois Secretary of State. In 1978, Mr. LINK unsuccessfully ran for Lake County Treasurer. Though he won 42% of the vote, he lost the election. Between 1982 and 1984, Mr. LINK performed various jobs including home remodeling. In 1984, Mr. LINK experienced a horrific personal tragedy when his fiancé was killed in a terrible automobile accident. For two years, this loss devastated Mr. LINK. During that time, Individual A offered Mr. LINK unwavering friendship and support, including employment and financial assistance. "He saved my life," Mr. LINK recalls.

In 1987 or 1988, Mr. LINK returned to public service as an administrator in the Illinois State Treasurer's Office. Approximately two years later, Mr. LINK accepted a position at Johnson Controls, a multinational conglomerate that produces industrial fire, HVAC and security equipment, where he worked in

governmental relations. Mr. LINK brought his knowledge of the mechanics of Illinois government to that position, where he focused on the IPTIP (Illinois Public Treasurers' Investment Pool) program.[1] Upon leaving Johnson Controls in the early 1990s, Mr. LINK briefly went into partnership in a failing forklift business, Major Industrial Trucking of Lake County. Mr. LINK worked tirelessly to "turn things around" there and his efforts saved the business. Unfortunately, after his business partner died, the business closed. By that time, Mr. LINK was eager to return to his true passion—public service.

In 1992, Mr. LINK was elected Chair of the Lake County Democratic Party, a position he proudly held until he resigned his office in 2020. In 1996, Mr. LINK ran for the Illinois Senate. "I worked my tail off knocking on doors and shaking hands," he recalls. Of the 63,000 plus votes in the 30th District, Mr. LINK defeated his opponent by only 832 votes. Mr. LINK was just the third Democrat in Lake County history to be elected to the Illinois Senate. And he was the first Democrat in Lake County history to win re-election to that seat. Mr. LINK held his Senate seat from 1996 until 2020. He is rightfully proud of the many ways in which he has effected positive change. Indeed, while he was active in politics, Mr. LINK's constituents often told him that the people of the 30th District were far better off than they were before he occupied that seat. And far beyond the boundaries of the 30th District, Mr. LINK has effected meaningful change in Illinois, as discussed *infra*. Notably, from the late 1960s when he began his career in public service until his resignation in 2020, there

---

[1] *See* State Treasurer's Act, 15 ILCS 505/17.

was never a scandal or an allegation of political corruption lodged against Mr. LINK.

### 5. Mr. LINK's Political Achievements

#### A. Diversity Initiatives Within the Lake County Democratic Party

From the time he was elected Chairman of the Lake County Democratic Party in 1992, Mr. LINK worked tirelessly to promote diversity at every level of leadership within Lake County. His efforts were tremendously successful and they have had a lasting impact, especially for women and minorities. Some of the many examples include leadership positions within the Lake County Clerk's Office, the Lake County Circuit Clerk, the Lake County Recorder, the Lake County Treasurer, the Lake County Sheriff, the Lake County Forest Preserve and the Lake County Board, all of which were previously held by men. And notably, the first African-American judge of the 19th Judicial Circuit was appointed under Mr. LINK's leadership. Mr. LINK credits his strong and independent wife and their four daughters, who wholeheartedly supported these efforts.

#### B. Leadership Positions in the Illinois Senate

For 24 years, Mr. LINK was a respected legislator who worked tirelessly to make Illinois communities safer, stronger and more prosperous. During that time, Mr. LINK held leadership positions and served on multiple committees, including Assistant Senate Majority Leader, Majority Caucus Whip, Chair of the Committee on Gaming, Vice Chair of the Committee on Elections and Vice Chair of the Committees on Financial Institutions, the Judiciary and Local Government. Mr. LINK led with a commonsense approach and always with the foremost goal of helping the people of

Illinois. In over 24 years, Mr. LINK never missed a single day of service when the Senate was in session. He arrived late to session only once, when he was asked to eulogize a mayor from the 30th District. Mr. LINK cherished his 24 years of service in the Illinois Senate, calling it the honor of a lifetime.

### C. Legislative Accomplishments

The impact of Mr. LINK's hard work and dedication is hard to quantify. Suffice to say that it reaches far beyond the 30th Legislative District. Indeed, Mr. LINK's body of work over 24 years has indisputably improved the lives of citizens across Illinois in meaningful and lasting ways. Some of his proudest achievements include:

- **Smoking Cessation and Environmental Protection**

In 2007, against stiff opposition, Mr. LINK worked indefatigably to pass "Smoke Free Illinois," a law protecting Illinoisans from the dangers of secondhand smoke by banning smoking in public places, workplaces and government vehicles. This initiative served as a model to other states, including Indiana and Wisconsin, who enacted similar measures. After passing this law, Mr. LINK focused on predatory marketing of flavored vaping devices to teens. Smoking cessation initiatives are among Mr. LINK's proudest achievements and are a central part of his legacy.

- **Environmental Protection Initiatives**

Mr. LINK's record in the Senate reflects his commitment to ensuring a safe and clean environment for Illinois. In 2001, he sponsored the Illinois' Wetland Protection Act, guarding wetlands from commercial development. The measure required the Illinois Department of Natural Resources to issue a permit before

wetlands may be altered or destroyed. The law further mandated that any proposed activity in Illinois' wetlands must strictly adhere to water quality standards. Mr. LINK also worked to pass laws protecting Illinoisans from the dangers of mercury and significantly reducing pollutants in our air and water. He passed legislation that reduced health hazards posed by high emission vehicles and required the State to assist and finance local governments in implementing energy conservation projects. Mr. LINK also passed a law mandating that funds collected from the Renewable Energy and Coal Resources Act be directed to the Department of Commerce and Economic Opportunity for use as grants to the Illinois Green Economy Network in order to fund education and training for energy efficient technology. Finally, Mr. LINK passed a law instituting pollution control standards at construction sites.

- **Public Health, Family, Women's Rights and Safety Initiatives**

Mr. LINK helped enact multiple health, safety and family-friendly laws in the State of Illinois, including: 1) a law declaring it a civil rights violation for an employer to refuse to hire, recruit, promote, discharge, or discipline on the basis of pregnancy, childbirth or medical disabilities; 2) the Illinois' Family and Medical Leave Act, providing paid leave for childbirth, the care of a family member with a serious health condition or recovery from a serious health condition; 3) the Prescription Drug Disposal Program, regulating the collection, transportation and disposal of unused pharmaceuticals to prevent misuse, abuse and environmental contamination; 4) a law regulating the disposal of infectious medical waste; 5) A law requiring multiunit

residential dwellings to have a fire protection access box with a key or access code to allow firefighters entry in emergencies.

- **Laws Protecting Children**

Among others, Mr. LINK sponsored and carried the following bills which were enacted into law and designed to protect and improve the lives of Illinois' children:

1. A law providing preschool education for all children in Illinois;
2. A law ensuring the safety of school buildings and establishing standards for school building inspectors;
3. Legislation protecting children on the Internet and requiring school districts to incorporate an Internet Safety course to be taught at least once per year to students in 3rd grade and above. The legislation also required the State Board of Education to make resource materials available on its website to educate children about online safety;
4. Mr. LINK expanded the crime of harassment through electronic communication to include "cyber-bullying;"
5. Comprehensive legislation making it unlawful to send a travel ticket to a minor without parental consent and creating the crime of solicitation to meet a child and prohibiting child sex offenders from knowingly using the Internet to communicate with children;
6. A law amending the Illinois Code and eliminating the statute of limitations on claims of sexual abuse sustained during childhood;
7. A law known as the "DCFS Abuse Prevention Plan," requiring the DCFS to submit a comprehensive child abuse and neglect prevention plan;
8. A law requiring the mandatory posting of DCFS Hotline Contact Information in prominent locations in all Illinois schools;
9. A law mandating that any organization that sets up soccer goals follow specific guidelines requiring any movable soccer goals to be tip-resistant;
10. A law establishing DHS Autism Project Coordination, which designates an Autism Spectrum Disorder Project Coordinator to addresses issues related to Autism, raise awareness about Autism and work with an Autism taskforce;
11. A law amending the mathematics curriculum in Illinois to include mandatory computer science curriculum required to graduate, and
12. A law establishing an Independent Mortality Review Team and mandating investigation when juveniles die in police custody.

- **Laws Protecting Senior Citizens**

While in office, Mr. LINK passed numerous laws to serve and protect the senior citizens of Illinois, including legislation regarding prescription drugs, home repair fraud and medical research. For example, to combat an influx of counterfeit

prescription drugs, Mr. LINK sponsored legislation strengthening existing requirements governing the distribution of prescription drugs and prohibiting their alteration. Mr. LINK passed legislation implementing stronger standards of licensure for wholesale prescription distributors including manufacturers distributing their own drugs. The legislation required all distributors to maintain records documenting where the drug has been and who has handled it from the point of origin to the point of sale. To help seniors manage the cost of prescription drugs, Mr. LINK voted to create a program allowing seniors to join a "buying club" wherein they pay a $25 fee to receive up to a 40% reduction in the cost of everyday prescriptions. Mr. LINK was the lead sponsor of the Senior Home Repair Fraud Protection Act, which increased criminal penalties for home repair fraud on seniors. Mr. LINK created the Excellence in Alzheimer's Disease Center Treatment Act, under which strategies are developed annually to treat and prevent Alzheimer's Disease in Illinois. Mr. LINK has also championed elderly persons residing in long-term care facilities. Among his many initiatives designed to protect these vulnerable citizens are the following laws, which he helped to enact:

1. A law requiring all persons entering long term care facilities to have vaccinations against disease;
2. The Nursing Home Penalty Collection Act, which provides that if the Director of Public Health determines that it would be in the best interest of the residents of a nursing home, the Director may require that the nursing home violating the Act use the amount of any penalty assessed under the Act to correct the violation rather than paying the penalty to the Department of Public Health for deposit in the Long Term Care Monitor/Receiver Fund, and
3. A law establishing a program of electronic monitoring for dementia patients living in long term assisted living facilities.

Examples of the worthy causes championed by Mr. LINK during his tenure in the Illinois Senate are legion.[2] He is to be applauded for his tireless commitment to bettering the lives of the citizens of Illinois.

### 6. Letters of Support

This Court has received several letters of support written by the friends, family members and a coworker of Mr. LINK. *See* Exhibit A. These letters universally describe him to be a good and decent man who has lived an honorable life. By all accounts, Mr. LINK has dedicated his personal life to the care of his friends and family members and he has been the kind of man who has always put the needs of others before his own. He employed these traits in his professional life as well, where he wholeheartedly devoted himself to serving the citizens of Illinois. Mr. LINK is known to be unwavering in his religious beliefs and to have consciously striven to pattern his life in a way that honors those beliefs. "It is in giving that we receive," Mr. LINK has often quoted.

Mr. LINK is perhaps best described as a champion of the "little guy." He embraces this description, likely owing to his own humble beginnings. As the letters note, Mr. LINK has selflessly performed countless good works—great and small— ranging from helping to feed and house impoverished families and Veterans to fundraising for disadvantaged schools to simply lending a listening ear to a friend

---

[2] Some of Mr. LINK's many legislative initiatives are outlined in the attachment marked "Exhibit C."

in need. His generosity and volunteerism and matched only by his empathy, compassion and kindness.

The letters also note that Mr. LINK is truly, genuinely and sincerely sorry for committing this offense and for the impact it has had on his beloved family. Mr. LINK and his wife are of advanced years and both suffer from serious medical conditions. For the past four years, this offense has caused a great deal of pain and concern and Mr. LINK is deeply regretful for this burden, which has been borne by his entire family. Mr. LINK respectfully asks this Court to consider that this offense does not represent him as a person. Nor does it represent the life he has led, which has been one of decency, honor and service to others

### III.
### CONCLUSION

Mr. LINK is a 76-year-old man with no prior criminal history. He made a terrible mistake in committing this offense. In the years since, Mr. LINK has done everything in his power to right his wrong. He has made amends to his family and friends, to whom he has been unwavering in his support and dedication. Mr. LINK's offense is wholly contrary to his otherwise law-abiding and upstanding life of service. He now stands before this Honorable Court, trusting that Your Honor will impose a sentence that is sufficient, but not greater than necessary, to serve the statutory purposes of sentencing. For all the reasons stated herein, Mr. LINK respectfully requests that this Court impose the recommended sentence of probation.

Respectfully submitted,


s/ *Catharine D. O'Daniel*
Catharine D. O'Daniel, Attorney
Defendant, **TERRANCE P. LINK**


**CATHARINE D. O'DANIEL**
Attorney for Defendant
LAW OFFICES OF CATHARINE D. O'DANIEL
One Prudential Plaza
130 East Randolph Street, Suite 2800
Chicago, Illinois 60601
312.580.2072
co1117@aol.com

## CERTIFICATE OF SERVICE

The undersigned, Catharine O'Daniel, an attorney, hereby certifies that this Sentencing Memorandum was served on all parties on February 21, 2024, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, and LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Respectfully submitted,


s/ *Catharine D. O'Daniel*
Catharine D. O'Daniel
Attorney for Defendant,
**TERRANCE P. LINK**

Catharine D. O'Daniel
LAW OFFICES OF CATHARINE D. O'DANIEL
One Prudential Plaza
130 East Randolph Street, Suite 2800
Chicago, Illinois 60601
312.580.2072 – office
312.269.1074 – facsimile
co1117@aol.com